UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION OF THE )
UNITED STATES OF AMERICA FOR A )
WARRANT AUTHORIZING THE )
INSTALLATION, ACTIVATION AND )
MONITORING OF A GLOBAL POSITIONING )   No. 4:19 MJ 7133 SPM
SYSTEM ELECTRONIC TRACKING DEVICE )
(GPS DEVICE) TO BE LOCATED IN OR ON THE )   **FILED UNDER SEAL**
BLACK 2013 CHEVROLET SILVERADO, WITH )
VIN #1GCRKTE73DZ256711, BEARING )
MISSOURI TEMPORARY LICENSE PLATE )
NUMBER 041-36K. )

## APPLICATION

COMES NOW the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and John R. Mantovani, Assistant United States Attorney for said District, and hereby makes application to this Court for a Warrant authorizing the installation, activation and monitoring of an electronic tracking device in or on the **Black 2013 Chevrolet Silverado, with Vehicle Identification Number (VIN) #1GCRKTE73DZ256711, bearing Missouri Temporary license plate number 041-36K** (hereinafter the "subject vehicle"), which is being utilized **Theodore LOVE**, pursuant to Rule 41, Fed. R. Crim. P. and 18 U.S.C. § 3117.

1. This application seeks authorization to monitor an electronic tracking device known as a Global Positioning System (GPS device). The GPS device would be concealed on the "subject vehicle" to be used by **Theodore LOVE**. The GPS device would enable the agents/officers of the Drug Enforcement Administration (hereinafter referred to as "investigative agency(ies)") to surveil said "subject vehicle." This GPS device emits an electronic signal that can be located by a locating receiver to be possessed by the officers. The GPS device and locating receiver monitor movement and physical location of the GPS device, but in no way transmits or

1

records voice communication or acquires oral communication. The above-mentioned "subject vehicle" which is being utilized in connection with the commission of offenses involving on-going violations of Title 21, United States Code, Sections 846 and 841(a)(1).

2. Attached to this application and incorporated by reference as is fully set out herein is the affidavit of Task Force Officer James Gaddy with the Drug Enforcement Administration, which alleges facts in order to show that:

> There is probable cause to believe that evidence of the commission of the above-described offenses can be obtained through the use of a GPS device in or on the "subject vehicle," thereby enabling agents/officers of the investigative agency(ies) to track and surveil the movements of the "subject vehicle" for a period of forty-five (45) days;

3. In the event that the Court grants this application, agents/officers of the investigative agency(ies) or their authorized representatives seek authority to surreptitiously enter the "subject vehicle," including entry onto private property, to effect installation, any time during the day or night.

4. In the event that the Court grants this application, there will be periodic monitoring of the GPS device during both daytime and nighttime hours for the next forty-five (45) days following the installation of said GPS device. In addition, the GPS device may produce signals from inside private garages or other such locations not open to public or visual surveillance.

5. In the event that the Court grants this application, it is requested that in addition to the installation of said device that the agents/officers of the investigative agency(ies) or their authorized representatives have the authority to maintain, service, repair, and remove the GPS device, any time during the day or night.

6. In the event that the Court grants this application, within ten (10) calendar days after the use of the tracking device has ended, the Government will provide notice to the person whose property was tracked unless delayed notice is authorized by the Court.

7. In light of the ongoing nature of the investigation as reflected in the attached affidavit, applicant requests that the application, affidavit and Warrant be sealed.

WHEREFORE, on the basis of the allegations contained in this application, and on the basis of the affidavit of Task Force Officer James Gaddy with the Drug Enforcement Administration, which is attached hereto and made a part hereof, applicant requests this Court to enter a Warrant authorizing law enforcement officials, agents/officers with the investigative agency(ies), or their authorized representatives, including but not limited to, other law enforcement agents and technicians assisting in the above-described investigation, to install, maintain, service, repair and ultimately remove a GPS device in or on the "subject vehicle"; to surreptitiously enter the "subject vehicle," including entry onto private property, to effect said installation, maintenance, and removal, any time during the day or night; and to monitor the signals from that GPS device following the issuance of the Court's Warrant, including signals produced from inside private garages and other locations not open to the public or visual surveillance, and signals produced in the event that the "subject vehicle" leaves the Eastern District of Missouri but remains within the United States, and so as not to jeopardize the ongoing investigation, that the application, affidavit and Warrant be sealed.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

_____
JOHN R. MANTOVANI, #50867MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-7649

Dated this ___2nd___ day of April, 2019.

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION OF )
THE UNITED STATES OF AMERICA FOR A )
WARRANT AUTHORIZING THE )
INSTALLATION, ACTIVATION AND )
MONITORING OF A GLOBAL POSITIONING ) No. 4:19 MJ 7133 SPM
SYSTEM ELECTRONIC TRACKING DEVICE )
(GPS DEVICE) TO BE LOCATED IN OR ON ) **FILED UNDER SEAL**
THE BLACK 2013 CHEVROLET SILVERADO, )
WITH VIN #1GCRKTE73DZ256711, BEARING )
MISSOURI TEMPORARY LICENSE PLATE )
NUMBER 041-36K. )

## **AFFIDAVIT**

James Gaddy, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration duly appointed according to law and acting as such.

Upon information and belief, the **Black 2013 Chevrolet Silverado, with Vehicle Identification Number (VIN) #1GCRKTE73DZ256711, bearing Missouri Temporary license plate number 041-36K**, (hereinafter the "**subject vehicle**"), which is being utilized by **Theodore LOVE** (hereinafter **LOVE**), is presently being used in a conspiracy to distribute and possess with the intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) (hereinafter the "**subject offenses**").

Your affiant further states that there is probable cause to believe that the installation and monitoring of an electronic tracking device, known as a Global Positioning Device (GPS), placed in or on the **subject vehicle** will lead to evidence of the aforementioned conspiracy to distribute and possess with the intent to distribute controlled substances, as well as identification of other individuals engaged in the commission of the aforementioned conspiracy and related crimes.

The source of your affiant's information and the grounds for his beliefs are based on your affiant's personal knowledge through ongoing investigations being conducted by the Drug

1

Enforcement Administration (DEA), as well as information provided by other members of the investigative team. Since this Affidavit is being submitted for the limited purpose of securing authorization for the installation of a GPS tracking device on the **subject vehicle**, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish the foundation for an Order authorizing the installation of said device.

## INTRODUCTION

I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

I am a Task Force Officer with the DEA and have been since 2010. I have been a deputized Task Force Officer with the DEA since January 2010 and am currently assigned to an Enforcement Group of the St. Louis Division Office. Prior to my DEA assignment, I was a sworn police officer with the St. Charles County Police Department and Breckenridge Hills Police Department for approximately 20 years. During the course of my law enforcement experience I have participated in numerous investigations involving controlled substances. I have conducted investigations of a variety of illegal drug-trafficking and money-laundering organizations. I have participated in investigations which led to the seizure of illegal drugs, weapons, and assets derived from the sale of illegal drugs, and the subsequent felony arrests of those individuals involved. I have participated in numerous drug-related training courses throughout my law enforcement career. I am familiar with and have used normal methods of investigation, including, but not limited to, visual and electronic surveillance, questioning of witnesses and defendants, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of confidential sources and undercover agents, and the use of court-authorized wire and electronic intercepts.

I am currently participating in an investigation regarding the illegal importation and distribution of narcotics by numerous individuals. One of the principal parties in this organization is **Theodore LOVE aka Teddy LOVE**. The investigation into the organization, which for the purpose of the Affidavit is the **LOVE** DTO was begun by members of the DEA in January of 2019.

## Target Subject Criminal History

In July of 1991, **LOVE** was convicted of Trafficking Drugs in the State of Missouri and was sentenced to 10 years in the Missouri Department of Corrections. On April 7, 1995, **LOVE** was convicted of possession of over 500 grams of cocaine with intent to distribute in United States District Court in the Eastern District of Missouri (USDC-EDMO) and sentenced to 97 months in the Bureau of Prisons (BOP.) On April 29, 2004, **LOVE** was convicted of conspiracy to distribute over 500 grams of cocaine in USDC-EDMO and was sentenced to 262 months in the BOP. Upon **LOVE**'s motion requesting a sentencing reduction and in 2014, **LOVE**'s sentence was ultimately reduced to 135 months in BOP on that charge. After serving his sentence, **LOVE** was released from prison and is currently under the supervision of Federal Probation and Parole out of the St. Louis office of the United States Probation Office.

## Investigation and Probable Cause

During the initial commencement of this investigation, members of the investigative team utilized information from a DEA Confidential Source (hereinafter CS.) CS has been cooperating with DEA since 2018 in other unrelated investigations. His/her cooperation has led to the numerous money seizures, narcotics seizures along with arrests of several offenders. CS has prior federal conviction for a drug offense. The information provided by CS has been corroborated and is believed to be reliable based upon law enforcement actions, including recorded telephone conversations, telephone toll analysis, and related intelligence ascertained throughout the investigation.

### A. Initial Interceptions of LOVE over CS's Consensually Monitored Telephone.

In January of 2019, investigators from the DEA St. Louis Division received information from the CS that he/she had been contacted by **LOVE**. **LOVE** contacted the CS and inquired about purchasing kilograms quantities of cocaine. After a short conversation regarding the transaction, both individuals agreed to speak about transactions in the near future.

The CS and **LOVE**'s conversations are being recorded via a court authorized consensually monitored cellular phone. The consensually monitored cellular phone was authorized on January 31, 2019 and has since been terminated. The consensual Title III intercept was initiated on the cellular telephone bearing the number (314) 333-9193 utilized by the CS and provided by the DEA to the CS. The monitoring of the consensually monitored cellular phone is ongoing.

From my training, and my experience, I know that drug traffickers often utilize code words or specifically speak in general terms and phrases when discussing drug transactions and illegal activity over telephones. This is in an effort to avoid other non-involved individuals over-hearing the discussions concerning these illegal activities. Further, drug traffickers and other savvy drug traffickers use code words or general terms and phrases to minimize the ability of law enforcement to intercept or over-hear the discussions and gather evidence of illegal activity. From my interactions and debriefing sessions with the CS, I know that CS is required to use this minimized language when discussing drug activities with others. Otherwise targets of the investigation would become suspicious the CS was working in law enforcement in an effort to gather evidence against the target subjects.

On February 8, 2019, the CS was contacted again by **LOVE** who was using a Missouri based cellular device with telephone number (314) 599-3271 (hereinafter **LOVE**'s cellular device.) **LOVE** and the CS had a recorded phone conversation about future narcotics transactions. The exact contents of the recorded conversation are directly quoted and explained below. In light of the coded language, I have set out in parenthesis what investigators believe to

be the meaning of the language based upon debriefing with the CS, my training, my experience and the instant investigation.

### i.) February 08, 2019 – 9:04pm (Session 38)

Outgoing from CS's consensually monitored telephone to **LOVE**, utilizing **LOVE**'s cellular device:

| | |
|---|---|
| CS: | What, what, what the climate like over there? |
| **LOVE:** | I mean you know I got a partner that you know if the numbers (purchase price for kilogram of cocaine) are both of us you know what I am saying he shit he can get 2 to 4 (2 to 4 kilogram cocaine quantities) you know what I am saying, it just depends. Like, I say what the numbers is, like, the last time I talked to him he was paying thirty two five (thirty two thousand five hundred dollars per kilogram). |
| CS: | Oh we will beat that (lower price per kilogram) ain't nothing yeah we beat that – you know what I am saying I be going where the transportation going you know what I am talking about. |
| **LOVE:** | Yeah, yeah, I understand. |
| CS: | You know what I am saying so, so you know it got to make sense on what they getting (total amount paid for shipment of cocaine) cause you know they got to pay they they runner (payment to courier). |
| **LOVE:** | Right, right, exactly. |
| CS: | You know what I am saying? But shit, we can we can do whatever. |
| **LOVE:** | Right. |
| CS: | Some real "Shazam!" (very good product) |
| **LOVE:** | Ok. |
| CS: | You know what I am saying? – And then it might be it might be some action where you know what I am saying like, like if they got like 10 or 20 going that way if a mother fucker can come up with a down payment on them (If **LOVE** can make a partial payment he can get between 10 and 20 kilograms). |

| | | |
|---|---|---|
| **LOVE:** | | Oh yeah! Now that now that's the thing. My partner he, he can move that (associate can sell that). He will be, you know what I am saying, like, that would be no problem for real. |
| **CS:** | | You know what I am talking about? |
| **LOVE:** | | Yeah! I am talking about, I'm talking about, I'm talking about – cash in hand (pay cash for product upon delivery) and…[Unintelligible.] |

Based on the investigators training, experience, and a debrief of the CS this recorded phone call with **LOVE** was to establish the quantity and price of cocaine **LOVE** and his associate can distribute. The initial 2 to 4 represents 2 to 4 kilograms of cocaine. **LOVE** advised his associate is paying "thirty two five" this is understood to mean thirty two thousand five hundred dollars per kilogram. The CS offered that he/she could provide between 10 to 20 kilograms of cocaine if **LOVE** could make a "down payment." The CS advised this would be a partial payment upon delivery with **LOVE** and his associate owing for the remainder. **LOVE** refers to "cash in hand" meaning he and his associate will have cash upon the delivery of the narcotics.

### ii.) February 11, 2019 – 2:39pm (Session 46)
Incoming from **LOVE**, utilizing **LOVE**'s cellular device to the CS's consensually monitored telephone:

| | | |
|---|---|---|
| **LOVE:** | | Ah, man I needed to talk to you, so ah, when you got free time just hit me up and we'll rap then. I know you got him with you. |
| **CS:** | | I mean, he don't understand what's going on. |
| **LOVE:** | | Yeah, ah, I just done talking to my partner right. So he, like uh, he just needed to know, uh like, a time frame so he won't have his ends out spread-ed (have his money together and ready). You know what I am saying? He can, you know, be able to do that. |
| **CS:** | | Okay, okay. Well I know it'll probably be around next week some time, when they come back in. |
| **LOVE:** | | Yeah, that's cool, that's cool, that's cool. I just need, I just need, you know what I'm saying, give him a time frame, so you know like, bam, you get here I got cash on hand (have cash ready when the narcotics are delivered). You feel what I'm saying? |

Based on the investigators training, experience, and a debrief of the CS, this recorded phone call with **LOVE** was **LOVE** attempting to establish a time frame for the delivery of cocaine so he and his associate could have the currency ready upon its arrival.

**B.     Court Authorized Precision Location Warrant for LOVE's Cellular Device.**

On February 13, 2019, investigators applied for and received authorization from the Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri for a Precision Location Warrant (PLW) for **LOVE**'s cellular device under cause number 4:19-MJ-00078 DDN for a term of 45 days. On March 29, 2019, investigators applied for and received an extension of the PLW for **LOVE**'s cellular device for another 45 days from Judge Noce. Monitoring of **LOVE**'s cellular device is on-going.

**C.     LOVE's Use of Target Vehicle to Attend Meeting with the CS.**

On February 20, 2019 at the direction of investigation, CS arranged a face-to-face meeting with **LOVE** in order to discuss the potential fictitious 20 kilogram drug transaction between **LOVE** and CS. On that afternoon, investigators established surveillance at a local restaurant within the St. Louis Metropolitan area where the meeting between **LOVE** and CS had been arranged. Investigators initiated surveillance on the outside of the restaurant, along with investigators positioned within the restaurant in order to oversee the meeting.

Shortly thereafter, investigators observed **LOVE** arrive on the parking lot of the restaurant in the **target vehicle** as the **target vehicle**'s driver and sole occupant. After parking the **target vehicle**, **LOVE** exited the **target vehicle** and entered the restaurant to meet with the CS about their future drug transaction.

At that time, investigators directed CS to proceed to the restaurant and make contact with **LOVE**. Investigators followed CS directly to the restaurant and observed CS enter the restaurant and make contact with **LOVE**.

Following **LOVE** and CS' meeting, both departed the restaurant in separate directions. Investigators then met with the CS at a neutral location in order to debrief the CS concerning their conversation. CS indicated they (**LOVE** and CS) discussed the prices per kilogram quantity of cocaine and logistics on how the cocaine would arrive to the St. Louis area.

**D.    LOVE's Continued Drug Activities.**

As the investigation continued, investigators were attempting to uncover the identity of **LOVE**'s associate. Investigators directed CS to attempt to postpone the pending fictitious drug transaction between CS and **LOVE**, and see if the unidentified associate of **LOVE** would come to that transaction.

In late March 2019, **LOVE** began to place outgoing calls over **LOVE**'s cellular device to CS. These calls were later verified through toll analysis of **LOVE**'s cellular device.

On March 21, 2019 and March 22, 2019, DEA investigators monitored two consensually recorded conversations between CS and **LOVE**. During the recorded conversations, **LOVE** expressed his desire to acquire approximately twenty kilograms of cocaine from CS in exchange for $250,000.00 United States currency as a down payment. The exact contents of the recorded conversation are directly quoted and explained below. In light of the coded language, I have set out in parenthesis what investigators believe to be the meaning of the language based upon debriefing with the CS, my training, my experience and the instant investigation.

i.) March 21, 2019 – 12:18pm (consensually recorded)
Incoming call from **LOVE** utilizing **LOVE**'s cellular device to the CS's consensually monitored telephone:

| | |
|---|---|
| **LOVE:** | Ok ok got you I hear what you are saying ok is there a number that you need like can you give me a number like 100 or 150 you know what I am saying (amount in kilograms of cocaine that the CS can provide). |
| **CS:** | ah shit like I said I know that I could have got like god dam me raise the roof with a quarter I could have got 20 off there (if **LOVE** can provide two hundred and fifty thousand dollars the CS can provided 20 kilograms of cocaine). |

| | |
|---|---|
| **LOVE:** | Ok, ok alright. |
| **CS:** | You know what I am saying. |
| **LOVE:** | Right ok I'm ah. |
| **CS:** | And they probably be like 30 and a half (thirty thousand five hundred dollars for each kilogram). |
| **LOVE:** | Ok alright, alright, I'm a put that. |

Based on the investigators training, experience, and debriefings of the CS, this recorded phone call with **LOVE** was to establish the quantity and price of cocaine **LOVE** and his associate can distribute. The initial "100 to 150" represents 100 to 150 kilograms of cocaine. The CS offered that he/she could provide 20 kilograms of cocaine if **LOVE** could provide a "quarter." The CS advised this would be a partial payment upon delivery with **LOVE** and a "quarter" is understood to be two hundred fifty thousand dollars.

ii.) March 22, 2019 – 12:36pm (consensually recorded)
Incoming call from **LOVE** utilizing **LOVE**'s cellular device to the CS's consensually monitored telephone:

| | |
|---|---|
| **CS:** | You know about how many you talking about? (the amount of kilograms of cocaine does **LOVE** want). |
| **LOVE:** | Yeah I mean if you said uh the 20 if we come with 250 and get the 20 you know hey (20 kilograms for 250 thousand dollars). |
| **CS:** | Ok well shit we we we gonna put it together. |
| **LOVE:** | Yeah do that. |

Based on the investigators training, experience, and debriefings of the CS, this recorded phone call with **LOVE** was to establish the quantity and price of cocaine **LOVE** and his associate can distribute. **LOVE** requested "20". The "20" represents 20 kilograms of cocaine. The "250" represents two hundred fifty thousand dollars.

### E. LOVE's Continuous Use of the Target Vehicle

Since the onset of the investigation, investigators have conducted numerous surveillances of **LOVE**. As referenced above in this affidavit, on February 20, 2019, **LOVE** drove the **target vehicle** to the meeting location with CS where **LOVE** and the CS discussed the future drug transaction **LOVE** is attempting to arrange. Both before and since that meeting, investigators have observed **LOVE** using the **target vehicle** as his daily means of transportation. On a daily basis, **LOVE** uses the **target vehicle** to travel to and from his place of employment, along with frequent trips to local casinos. To date, investigators have yet to witness **LOVE** operating another vehicle besides the **target vehicle**.

### F. Failure of Precision Location Telephone Tracking.

I believe the authorization of a GPS (global positioning system) is vital to assist in the surveillance of **LOVE**. **LOVE** is a former federal defendant and is currently under the supervision of federal probation. **LOVE** is familiar with law enforcement tactics in conducting investigations. The court authorized PLW on **LOVE**'s phone, though helpful at times, does not give the surveillance team real time locations and in fact gives a delay time and location. Further, **LOVE** at times drives in such a reckless manner that the investigative team is unable to maintain surveillance. Being able to monitor real time geo-location data from the **target vehicle** will allow investigators to monitor **LOVE**'s whereabouts without compromising the covert nature of their surveillance or jeopardizing the public when attempting to maintain visual contact with the **target vehicle** when **LOVE** is driving recklessly.

### Request for Night-time Installation and Maintenance

I know from the surveillance of **LOVE** that it will be difficult to place the GPS on the **target vehicle** during the day-time hours. Investigators have already observed **LOVE** engaging in counter-surveillance tactics when he is the operating the **target vehicle** i.e. driving at a high rate of speed and/or in a reckless manner, changing lanes to determine if he is being followed, taking

sudden and unnecessary turns, etc. Investigators also know **LOVE** is a prior Federal inmate from his previous drug trafficking crimes and many drug traffickers and the members of their organizations continue to engage in counter-surveillance when at their residences or places of employment. Investigators believe that if the GPS is placed on the **target vehicle** during the day-time hours, law enforcement could be seen by **LOVE** or other yet un-identified co-conspirators. This could then compromise the cover nature of the investigation. When not being used by **LOVE**, the **target vehicle** typically has been parked at **LOVE**'s place of employment, which is occupied by several co-workers of **LOVE**. Investigators are confident if co-workers observed investigators in close proximity to the **target vehicle**, **LOVE**'s co-workers would alert **LOVE**. I believe that detection of investigators placing the GPS on the **target vehicle** by either LOVE or other pedestrians in the area will hinder the investigation. Because of these factors, the installation, maintenance or removal of the GPS on/from the **target vehicle** would be difficult to accomplish during the time period of 6:00 a.m. to 10:00 p.m. Therefore, I request that the time-frame of authorization to install, maintain, and/or remove the GPS device include any time during the day or night.

## Request for Delayed Disclosure

Additionally, given the nature of the investigation described herein, agents do not believe the investigation will reasonably be concluded in the next 180 days/6 months. Any safety concerns to cooperators, undercover agents, witnesses that will not be resolved or mitigated in less than 180 days/6 months.

Your Affiant believes that it is paramount that the agents/officers of the investigative agency(ies) receive the authorization requested with this application. It is critical that the investigative team be able to monitor the movements of the **subject vehicle** thereby assisting in the identity of additional co-conspirators, sources of supply, and "stash houses." It is believed that tracking the movements of **LOVE** in the **subject vehicle** would greatly aid in this endeavor.

Your Affiant further believes that the requested authorization would be a valuable asset achieving the overall goals of the investigation and assist in a successful prosecution of the members of the narcotics organization.

Based on the above information, there is probable cause to believe that the **subject vehicle** has and will be used to transport controlled substances, the proceeds of controlled substance sales, or in a conspiracy to distribute narcotics.

### Request for Sealing

Due to the ongoing nature of the investigation and this affidavit, I request that this Affidavit be sealed.

WHEREFORE, your affiant respectively requests that the Court issue an order authorizing law enforcement officials, agents/officers with the DEA and other law enforcement agents and technicians acting under the supervision of federal agents, or their authorized representatives, to install and monitor, maintain, service, repair and ultimately remove a GPS device in or on the **subject vehicle** for a period of forty-five (45) days following the issuance of the Court's order, including signals produced from inside private garages and other locations not open to the public or visual surveillance, and signals produced in the event that the **subject vehicle** leaves the Eastern District of Missouri but remains within the United States, and that the notice requirements of Rule 41(d) be delayed until further notice of this Court so as not to jeopardize the ongoing investigation.

_____
James Gaddy
Task Force Officer
Drug Enforcement Administration

Dated this __2nd__ day of April, 2019.

Sworn to and subscribed before me this __2nd__ day of April, 2019.

_____
SHIRLEY P. MENSAH
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri